IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LOCO BRANDS, LLC d/b/a DIRECT TEK, | § § § | |
| *Plaintiff*, | § § | CASE NO. 6:18-CV-69-JDK-KNM |
| v. | § § | |
| BUTLER AMERICA, LLC, and FRONTIER COMMUNICATIONS CORPORATION, | § § § § § | |
| *Defendants*. | § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This action was referred to United States Magistrate Judge K. Nicole Mitchell pursuant to 28 U.S.C. § 636. Docket No. 2. The Report and Recommendation of the Magistrate Judge (Docket No. 95, the "Report"), which contains her findings, conclusions, and recommendations regarding motions to dismiss filed by Defendant Frontier Communications Corporation ("Frontier") and Defendant Butler America, LLC ("Butler") (Docket Nos. 67 & 69), has been presented for consideration. The Report recommends granting-in-part and denying-in-part both motions. Docket No. 95. Plaintiff Loco Brands, LLC d/b/a Direct TEK ("Direct TEK") filed written objections (Docket No. 103), to which Butler and Frontier separately responded (Docket Nos. 107 & 108). Frontier also filed written objections (Docket No. 106), to which Direct TEK responded (Docket No. 109). Having conducted a de novo review, the Court **OVERRULES** Direct TEK's and Frontier's objections for the reasons stated herein. The Magistrate Judge's Report is accordingly **ADOPTED.**

1

## I. Standard of Review and Reviewability

The Court reviews objected-to portions of a Magistrate Judge's Report and Recommendation de novo. *See* FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In conducting a de novo review, the Court examines the entire record and makes an independent assessment under the law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## II. Direct TEK's Objections

Direct TEK objects to the dismissal of its civil conspiracy claims and the denial of its request for leave to amend. Docket No. 103 at 2. Notably, Direct TEK does not assign error to any of Judge Mitchell's findings or conclusions, but rather objects to the recommendation "[b]ecause Plaintiff now has evidence it did not possess at the time the Second Amended Complaint was filed, and because such evidence demonstrates a preconceived plan and meeting of the minds." Docket No. 103 at 2. In support, Direct TEK submits the affidavit of Michael Crawford, who "worked as a telecommunications technician at property owned by Frontier." Docket No. 103-1 at ¶ 1.

Butler and Frontier ask the Court to overrule the objection for two reasons. *See* Docket Nos. 107 & 108. First, Defendants contend that an amendment based on the new allegations in Mr. Crawford's affidavit would be untimely. *See* Docket Nos. 107 at 1; 108 at 1–2. The Court agrees. The time for amending pleadings has passed, discovery is closed, and Direct TEK has had three opportunities to state a claim for civil conspiracy against Defendants. Docket Nos. 107 at 2; 108 at 2. Direct TEK, moreover, does not offer any substantive reason to justify its delay. Allowing Direct TEK to amend its pleadings at this late stage would be unduly burdensome and prejudicial

2

to Defendants. Judge Mitchell thus correctly denied Direct TEK's request to replead.

Defendants also argue that Mr. Crawford's affidavit does not remedy the identified deficiencies in Direct TEK's civil conspiracy claim. Docket Nos. 107 at 2; 108 at 2–4. Again, the Court agrees. Judge Mitchell found that Direct TEK failed to state a claim for civil conspiracy because it "fail[ed] to state a preconceived plan or a time and place at which the Defendants had a meeting of the minds." Docket No. 95 at 16. Nothing in Mr. Crawford's affidavit fixes that problem. Mr. Crawford does not assert that there was a preconceived plan between Butler and Frontier, nor does he specify a time and place at which Butler and Frontier had a meeting of the minds. *See* Docket No. 103-1.

Accordingly, Direct TEK's objections are **OVERRULED.**

### III. Frontier's Objections

Frontier objects to the Report "insofar as it recommends denying Frontier's Motion to Dismiss as to the two remaining claims of . . . [Direct TEK]: (1) Tortious Interference with Contract . . . ; and (2) Discrimination and Retaliation under 42 U.S.C. § 1981." Docket No. 106 at 1. The Court addresses each claim in turn.

#### A. Tortious Interference with Contract

To state a claim for tortious interference with contract, a plaintiff must allege: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)). "To prevail on tortious interference with contract, a plaintiff must allege the existence of a specific contract." *Randall v. L-3 Commc'ns Corp.*, 2017 WL 412416, at *3 (N.D. Tex. Jan.

3

31, 2017) (citing *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet denied)).

Frontier first argues that "Direct TEK failed to specifically identify any of the technicians [ ] whose contracts it claims that Frontier willingly and intentionally interfered." Docket No. 106 at 2 (citing *Randall*, 2017 WL 412416 at *3). Rejecting a similar argument by Butler, Judge Mitchell explained that, "[w]hile Plaintiff has not described its contracts with its technicians in detail, the facts alleged are sufficient to support the inference that contracts existed between Plaintiff and its technicians that were subject to interference." Docket No. 95 at 21. The Court agrees. In its Complaint, Direct TEK alleges that "Plaintiff contracts with many telecommunications technicians and places them across the country via its contracts and business relationships." Docket No. 55 at ¶ 6. Direct TEK also alleges that it "placed" technicians with "Butler on a project for Frontier." *Id*. at ¶ 7(e). Further, Direct TEK alleges that "[t]here was/is an existing contract between Direct TEK and the technicians who were fired by, solicited and lied to by Defendants." *Id*. at ¶ 15. Taking these facts as true and reading the Complaint in the light most favorable to Direct TEK, the Court finds that Direct TEK has adequately pled the existence of valid contracts subject to interference.

Next, Frontier argues that Direct TEK's Complaint is "devoid of any specific factual allegation . . . that Frontier interfered with any such contracts with its technicians." Docket No. 106 at 2. Frontier further argues that Direct TEK fails to allege that "Frontier was aware of any contractual relationship between it and any specific technicians." Docket No.106 at 3. To establish a willful and intentional act of interference, however, "a plaintiff is not required to prove intent to injure but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex.,*

4

*Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). The interfering party must "have 'actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Wolf v. Cowgirl Tuff Co.*, 2016 WL 4597638, at *4 (W.D. Tex. Sept. 2, 2016) (quoting *Steinmentz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 277–78 (Tex. App.—San Antonio 1985, writ ref'd, n.r.e.)).

Here, the Complaint states that "Butler and Frontier conspired to destroy Direct TEK's business . . . because of Direct TEK's refusal to acquiesce to . . . Defendants' illegal practice of engaging in racial prejudice." Docket No. 55 at ¶ 7(e). The Complaint then details two incidents in which Frontier insisted or pressured Butler to engage in racially discriminatory actions. In one, Direct TEK asserts that Frontier insisted Butler fire "numerous African-American technicians placed in Southeast Texas by Direct TEK[,]" and in the other, it alleges that Frontier fired "one or more" African-American technicians and pressured Butler to demand a "Caucasian" replacement. Docket No. 55 at ¶ 7(e). To support the latter incident, Direct TEK produced an email from Butler's Susan Nab that explicitly requests a "Caucasian" replacement technician—"likely because of pressure from Frontier." *See* Docket No. 70-1 at 1; Docket No. 55 at ¶ 7(e). At this stage of the proceedings, these allegations are sufficient to support the reasonable inference that Frontier desired to interfere with the contracts between Direct TEK and its technicians. Further, as Judge Mitchell observed, "the totality of the facts alleged in the [Complaint] allow for the reasonable inference that Frontier knew or reasonably should have believed in the existence of . . . the contracts between Plaintiff and its technicians." Docket No. 95 at 8 (citing *Wolf v. Cowgirl Tuff Co.*, 2016 WL 4597638, at *4 (W.D. Tex. Sept. 2, 2016)).

Finally, Frontier argues that "Direct TEK fails to allege any specific facts . . . in support of its claim that Frontier willingly and intentionally interfered with its contract with Butler." Docket

5

No. 106 at 3. The Complaint, however, alleges that Frontier "insisted" and "pressure[d]" Butler to engage in racially discriminatory behavior and then "disparaged and insisted to Butler . . . that Direct TEK be fired." Docket No. 55 at ¶¶ 7(e), 11. These allegations are sufficient to support the reasonable inference that Frontier desired to interfere with the contract between Direct TEK and Butler when it "insisted to Butler . . . that Direct TEK be fired." Docket No. 55 at ¶ 11; *see Wolf*, 2016 WL 4597638, at *4. *See also* Docket No. 95 at 8 (noting that "the totality of the facts alleged in the [Complaint] allow for the reasonable inference that Frontier knew or reasonably should have believed in the existence of the contract between Plaintiff and Butler").

Accordingly, the Court **OVERRULES** Frontier's objection and holds that Direct TEK sufficiently pled its tortious interference with contract claim.

B. **Discrimination and Retaliation Under 42 U.S.C. § 1981**

To state a § 1981 claim, a plaintiff must allege "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). Frontier challenges whether Direct TEK sufficiently pled the first two elements identified above. Docket No. 67 at 6–8.

Regarding the first element, the Fifth Circuit held in *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017),[1] that a plaintiff had "adequately [pled] the first element of a § 1981 claim by alleging that [it] is a '100% African American-owned body shop.'" Here, by alleging that it is a minority-owned business, Direct TEK sufficiently pled the first element

---

[1] Frontier appears to take issue with Judge Mitchell's reliance on *Body by Cook* because it is "a case that no party raised in its briefing on the Motions to Dismiss." Docket No. 106 at 4. Courts, however, may consult binding case law, even when the litigants failed to do so. *See Southwestern Bell Tel., L.P. v. Arthur Collins, Inc.*, 2005 WL 6225305, at *5 (N.D. Tex. Oct. 14, 2005) ("A longstanding doctrine of our jurisprudence is that a court is bound to follow precedent established by a court 'superior to it.'") (citation omitted)*; see also Cook v. McQuate*, Civil Action No. 7:15-cv-00456, 2016 U.S. Dist. LEXIS 136323, at *4 (W.D. Va. Sep. 29, 2016).

6

of a § 1981 claim. Docket No. 55 at ¶ 7(e); *see Body by Cook*, 869 F.3d at 386.

Regarding the second element, the Fifth Circuit has held that a plaintiff must allege that "the defendant had an intent to discriminate on the basis of race"—and that "discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Body by Cook*, 869 F.3d at 386 (citations omitted and alterations in original). Frontier argues that Direct TEK did not sufficiently plead intent. Docket No. 106 at 4–6. "[A]t most, Direct TEK has pled that its owner is a racial minority and that Frontier terminated . . . Direct TEK's employees because it allegedly harbored an animus against African-American contractors who just happened to be employed by Direct TEK." *Id*. at 6.

Direct TEK's intent allegations are sufficient. In addition to alleging intent generally, the Complaint identifies at least two incidents in which Frontier allegedly discriminated against Direct TEK and its technicians on the basis of race. *See supra*, page 5 (citing Docket No. 55 at ¶ 7(e)). Direct TEK then alleges that it "refused to comply with Frontier/Butler/Nab's acts of racial prejudice" and was subsequently removed from all Frontier projects. *Id*.; Docket No. 70-2 at 1. Direct TEK's allegations, taken as true and in the light most favorable to the plaintiff, especially in light of the email from Ms. Nab requiring a "Caucasian" replacement technician, make plausible the inference that Frontier intended to discriminate against Direct TEK and its technicians on the basis of race.

Accordingly, Frontier's objections regarding the § 1981 claim are **OVERRULED**.

## IV. Conclusion

Having made a de novo review of the written objections, the Court concludes that the objections are without merit and that the findings and conclusions of the Magistrate Judge are correct. Accordingly, it is

**ORDERED** that Direct TEK's and Frontier's objections are **OVERRULED** and that the Magistrate Judge's Report (Docket No. 95) is **ADOPTED** as the opinion of this Court.

So **ORDERED** and **SIGNED** this **29th** day of **May, 2019.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE